| | |
|---|---|
| COMMONWEALTH EQUITY SERVICES, LLC d/b/a COMMONWEALTH FINANCIAL NETWORK and MARGARET BENISON,<br><br>Plaintiffs,<br><br>v.<br><br>THE OHIO NATIONAL LIFE INSURANCE COMPANY; OHIO NATIONAL LIFE ASSURANCE CORPORATION; and OHIO NATIONAL EQUITIES, INC.,<br><br>Defendants. | Civil Action No. 18-12314-DJC<br>Plaintiffs' Reply<br>(Leave to file granted 2/6/2019) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL FINRA ARBITRATION AND STAY COURT PROCEEDINGS**

Plaintiffs[1] hereby submit this reply to Defendants'[2] Opposition ("Opp.") to Plaintiffs' Motion to Compel FINRA Arbitration and Stay Court Proceedings.

**I. OHIO NATIONAL'S OPPOSITION CONCEDES THAT ON EQUITY, COMMONWEALTH AND BENISON ARE SUBJECT TO MANDATORY FINRA ARBITRATION PURSUANT TO NASD CODE §13200(a).**

Plaintiffs' Motion and Memo (pp. 5-6) clearly asserted that Plaintiffs' claims against ON Equity were subject to mandatory FINRA Arbitration pursuant to FINRA Code §13200(a). Defendants' Opposition did not address Plaintiffs' position. Rather, its arguments only addressed the contractual arbitration clause in the Addendum to the Selling Agreement. Thus, ON Equity has conceded that it must be compelled to FINRA Arbitration.[3]

---

[1] Plaintiffs are Commonwealth Equity Services, LLC d/b/a Commonwealth Financial Network ("Commonwealth") and Margaret Benison ("Benison").
[2] Defendants are The Ohio National Life Insurance Company ("ON Insurance"), Ohio National Life Assurance Corporation ("ON Assurance"), and Ohio National Equities, Inc. ("ON Equity") (collectively "Ohio National" or "Defendants").

## II. DEFENDANTS' ARGUMENT DOES NOT INVOLVE CONTRACT EXISTENCE, THUS, THE PRESUMPTION FAVORING ARBITRABILITY APPLIES.

The parties' agree that the Court should decide the issues of whether: (1) a valid contract exists; and (2) the dispute at issue falls within the scope of the arbitration clause of that contract. Ohio National's Opposition argues that the first factor (i.e., no valid contract exists) is lacking; however, as explained below, its argument is unavailing.

### A. Defendants' Argument That No Valid Agreement Exists Has No Support in Fact or Law.

Ohio National's Opposition presents the issue before the Court as an issue of contract existence but provides no fact or caselaw to support its argument.[4] Indeed, the Opposition does not challenge the formation or existence of the Selling Agreement or the Addendum which contains the arbitration clause, and cites no law or fact that would render the contract invalid under traditional principles of law and equity,[5] such as for lack of consideration or mutual assent, duress, or fraud. See Escobar-Noble, 680 F.3d at 123; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). To the contrary, Ohio National agrees that it is a signatory to the Selling Agreement and the Addendum. See Opp. at 3 (admitting ON Insurance and ON Assurance are "parties to a pre-dispute agreement that specifically provided for arbitration").

Moreover, Ohio National does not repudiate, nor does it make any claim to any grounds

---

[3] See Eldridge v. Gordon Brothers Group, L.L.C., 863 F.3d 66, 84 (1st Cir. 2017) (failure to raise argument in opposition to a motion waives that argument thereafter).
[4] A survey of every case cited by Ohio National supports Plaintiffs' interpretation of the Federal Arbitration Act ("FAA") 9 U.S.C. § 2. For example, the courts in many of the cases cited by Ohio National *compelled* arbitration. See e.g., Awuah v. Coverall N. Am., Inc., 703 F.3d 36 (1st Cir. 2012) (compelling arbitration of an agreement formed through incorporation by reference); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985) (compelling arbitration upon finding statutory claims were not precluded by Federal law); Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471 (1st Cir. 2011) (compelling arbitration where agreement was supported by adequate consideration); Salvadori v. Option One Mortgage Corp., 420 F.Supp.2d 349 (D.N.J. 2006) (compelling arbitration where agreement was not unenforceable under state law).
[5] See Shen v. CMFG Life Insurance Company, 2016 WL 1129308, at *11 (D.Mass., 2016) (issues of contract validity are to be decided under traditional state law principles of contract formation).

for the revocation of the Addendum. Murray v. United Food and Commercial Workers International Union, 289 F.3d 297, 302 (4th Cir. 2002) ("the FAA specifically contemplates that parties may also seek revocation of an arbitration agreement under 'such grounds as exist at law or in equity'"). Indeed, the Addendum is valid under the scope of inquiry articulated by the Supreme Court:

> The final phrase of §2 … permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," **but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.**

AT&T Mobility LLC, 563 U.S. at 339 (emphasis added).

### B. Ohio National is "Bound" by the Agreement, Requiring the Court to Apply the "Presumption" Favoring Arbitrability.

Ohio National argues that the presumption favoring arbitrability as to the scope of the agreement does not apply because they are not "bound" by the arbitration agreement. See Opp. at 9-10. Ohio National interprets the word "bound" to mean that a party is "required to arbitrate." See Opp. at 9. This argument is at best circuitous: the caselaw developed under the FAA clearly defines "bound" to mean a person or entity who is a signatory to the arbitration agreement or able to enforce the agreement through law or equity, such as through estoppel. See Escobar-Noble, 680 F.3d at 121; Comer, 436 F.3d at 1103; McCarthy, 22 F.3d at 355. Ohio National is a party to a valid agreement. They are thus bound by the agreement and, therefore the presumption of arbitrability applies to the agreement.[6]

The case cited by Ohio National, Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006), is

---

[6] Ohio National argues that the summary judgment standard should be applied by the Court to this dispute because an issue of fact concerning contract existence is before the Court. See Opp. at 10-11. As is shown above, because no issue of fact as to whether an agreement to arbitrate exists, Ohio National is not entitled to the summary judgment standard. See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

consistent with the above analysis. The Comer court found that it could not apply the presumption of arbitrability because Comer was not a party to the agreement, nor could he be compelled to arbitrate under theories of estoppel or third party beneficiary. Id. at 1102-03. The court stated that Comer was not required to arbitrate his claim because, "Smith Barney's petition comes within the general rule that a nonsignatory is not bound by an arbitration clause." Id. at 1103. Here, however, there is no dispute that all Defendants are signatories to the agreement.

### III. OHIO NATIONAL'S ARGUMENT CONCERNING APPLICATION OF A FINRA CODE PROVISION IS TO BE DECIDED BY FINRA, NOT THIS COURT.

Ohio National argues that because they interpret FINRA Code § 13200 to not require them to arbitrate in FINRA, and the arbitration clause invokes the FINRA Code, the Court should decide that they cannot be compelled to FINRA arbitration. See Opp. at 11-13. However, the invocation of FINRA rules under the arbitration agreement[7] shows the intent of the parties to have FINRA arbitrators decide questions concerning the FINRA Code. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 86 (2002); PaineWebber Inc. v. Elahi, 87 F. 3d 589, 599-601 (1996). As stated in Howsam, "[P]arties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters." The court must infer and assume that the parties intended the arbitrator to decide questions of forum specific rules unless a statement to the contrary exists in the arbitration agreement. Id. See also PaineWebber, 87 F. 3d 599-601. As the Howsam Court explained:

> NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it. In the absence of any statement to the contrary *in the arbitration agreement*, it is reasonable to infer that the parties intended the agreement to reflect that understanding … and for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy-a goal of arbitration systems and judicial systems alike.

---

[7] Plaintiff's Memo. at 5; Comp., Ex. A, ¶3.

Id.

Here, like in Howsam and PaineWebber, there is no statement in the Addendum that provides for a court to interpret the FINRA Code. In fact, the Selling Agreement provides that all parties agree to abide by FINRA rules. See Comp., Ex. A at ¶3. Moreover, there are two FINRA Rules directly on point: (1) FINRA Code §13203 specifically provides that the Director of FINRA Dispute Resolution may decline arbitration if the Director determines "given the purposes of FINRA and the intent of the Code" the forum is inappropriate; and (2) FINRA Code §13413 specifically provides that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code." See e.g. PaineWebber, 87 F. 3d at 600-01 ("NASD Code section 35, empowering the arbitrator to "interpret and determine the applicability of all provisions under the Code," strongly undercuts any argument that the parties intended the section 15 time bar to be an arbitrability issue to be decided only by the courts.") Accordingly, it is for FINRA to decide questions concerning the application of the FINRA Code to the specifics of a case. Id. Thus, the Court must compel Ohio National to FINRA arbitration.

**IV. IF THE COURT RULES ON DEFENDANTS' "IN ACCORDANCE WITH" FINRA CODE ARGUMENT, IT SHOULD COMPEL FINRA ARBITRATION.**

    **A. Defendants' "Interpretation" of the "In Accordance With" Language is Misguided.**

Ohio National argues that, even though ON Insurance and ON Assurance signed the Addendum voluntarily agreeing to arbitrate in FINRA, they cannot be compelled to do so because, if they had not signed the Addendum, FINRA Code §13200 would not **require** them to arbitrate. This argument is without merit. Under Ohio National's theory, if the Addendum had stated "arbitration in accordance with the rules of AAA or JAMS," they could not be compelled to arbitration because AAA/JAMS rules do not require them to arbitrate absent a

contractual arbitration agreement. Ohio National's "interpretation" is contrary to the principles of contract interpretation, as well as common sense. In addition, to the extent one views the issue as being ambiguous, the presumption favoring arbitration would also require a finding that the matter should be referred to arbitration.

### B. The Argument that the FINRA Code Does Not Allow Arbitration between Members and Non-Members Has No Support in Fact or Law.

Ohio National argues that the FINRA Code does not allow for arbitration between members and non-members due to a language change in the FINRA Code "Required Arbitration" section (NASD 10201(a) and FINRA Rule 13200). See Opp. at 11-16. This argument is a red herring. Both before and after such language change, FINRA could and would conduct an arbitration between members and non-members pursuant to the plain language of the Addendum. Since the language change, FINRA has conducted arbitrations in industry disputes between members, associated persons and non-members on a voluntary basis and pursuant to arbitration agreements. See In the Matter of the Arbitration Between: PMW Partners D/B/A Capital Trust Wealth Management Group v. NBC Securities, Inc., RBC Centura Banks, Inc., 2011 WL 1938215, at *8 (FINRA, May 9, 2011) (non-member compelled by District Court to FINRA arbitration in industry dispute).[8]

In sole support of its position, Ohio National cites UBS Bank USA v. Hussein, 2014

---

[8] See also In the Matter of the Arbitration Between: Michael Gerard Rom v. Philip Edward Steele, First Financial Services LLC, 2017 WL 5869696, at *2 (FINRA, Nov. 24, 2017) (non-member successfully compelled FINRA arbitration of industry dispute); In the Matter of the Arbitration Between: Charles Schwab & Co., Inc. v. Bluemont Capital Advisors,LLC and Michael Peter Duprey, 2013 WL 772743, at *2 (FINRA, Feb. 20, 2013) (voluntary basis) (confirmed Charles Schwab & Co., Inc. v. WS Wealth Management, LLC, 2016 WL 7033699, at *3 (E.D.Va., 2016)); In the Matter of the Arbitration Between: Morgan Stanley Smith Barney LLC, Morgan Stanley Smith Barney FA Notes Holdings LLC v. Francis X. Schiavetti, 2015 WL 4466938, at *2 (FINRA, July 15, 2015) (same).

WL 1600375, at *3 (D. Utah, 2014).⁹  However, UBS Bank is not controlling and is distinguishable from this case.  First, in UBS Bank, UBS Bank was not a party to the arbitration provision, whereas, here ON Insurance and ON Assurance are signatories to the Addendum.  Id.  Second, unlike the Addendum, the forum selection provision in UBS Bank stated that the parties were giving up their right to sue in court, "except as provided by the rules of the arbitration forum in which the claim was filed." ¹⁰  Id. at *2.  The provision allowed the parties to sue in court if the rules of the arbitration forum allowed for court litigation.  Here, the Addendum states that the parties will resolve the dispute only in arbitration, stating that any dispute "*shall* be submitted to arbitration" and "[j]udgment upon the award rendered *by the arbitrators* may be entered in any court of competent jurisdiction."  See Comp. Ex. C.

Lastly, the court in UBS Bank cited a letter from FINRA to the defendant, rather than the FINRA Code, to state that the Code did not allow UBS Bank to arbitrate in FINRA.  UBS Bank USA, 2014 WL 1600375 at *3.  Courts in the First Circuit, when faced with similar correspondence from FINRA, have compelled arbitration, finding that it is for FINRA to decide whether FINRA has jurisdiction.  See Paquette v. McDermott Inv. Services, LLC, 2014 WL 5313945, at *8 (D. Mass., 2014); Paine Webber, 87 F. 3d at 597 ("[R]eliance on the NASD staff attorney's letter is misplaced.  There is no assurance that the letter represented the position of the NASD at the time").

**V.    A STAY IS APPROPRIATE REGARDLESS OF WHETHER ON INSURANCE AND/OR ON ASSURANCE ARE REQUIRED TO ARBITRATE.**

---

⁹ Ohio National's comparison of FINRA "Industry Code" §13200(a) with FINRA "Customer Code" § 12201 is inapposite.  See Opp. at 15.  Whether arbitration proceeds under either code is for the arbitrators to decide.  See UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc., 660 F.3d 643, 652 (2nd Cir. 2011).
¹⁰ Ohio National states that, "[t]he contract provision at issue [in UBS Bank] indicated that FINRA was the sole forum in which arbitration could be conducted."  Opp. at 13.  Not true.  In UBS Bank arbitration could occur in FINRA "*or any other* national securities exchange's arbitration forum upon which UBS Financial Services Inc … is legally required to arbitrate ..."  See UBS Bank USA v. Hussein, 2:14-cv-00106-DB (2014),(Doc. 19-1), at 20.

### A. ON Equities, ON Insurance and ON Assurance Are Jointly Liable For Breach of the Selling Agreement's Payment Obligation.

The application of the law to the language in the Selling Agreement and prospectus dictates that all three Defendants are jointly liable for the payment of compensation to Commonwealth pursuant to §9 of the Selling Agreement. See Spicer v. James, 487 N.E.2d 353, 355 (Ohio App., 1985); Quintin v. Magnant, 285 Mass. 450 (1934).[11]

First, it is undisputed that all three Defendants are parties to the Selling Agreement. See Comp. Ex. A. "Generally, an obligation entered into by more than one person is presumed to be joint." Spicer, 487 N.E.2d at 355; Lovell v. Commonwealth Thread Co., 272 Mass. 138 (1930).

Second, the Defendants undertake obligations in the Selling Agreement in the conjunctive, indicating that they are jointly liable. The Selling Agreement is between ON Insurance, ON Assurance, ON Equities *and* Commonwealth. See Comp. Ex. A at 1. The Selling Agreement states that all three Defendants "propose to have BD's representatives solicit sales of the Contracts." Id. The Selling Agreement also states that all three Defendants "hereby appoint BD [Commonwealth] to supervise solicitations of the Contracts." Id. Under "Commissions Payable," the Selling Agreement provides that the BD will be paid commissions according to the Commission Schedule. It does not identify any single Defendant as having sole responsibility for such payment obligation. Id., ¶9.

Third, to the extent any differentiation is made between the Defendants with respect to commissions, ON Equity is identified. For example, if Commonwealth is required to refund any commissions, it must refund such commissions to ON Equity, not ON Insurance or ON Assurance, and ON Equity "agrees to notify BD . . . of any premium refund or a commission

---

[11] "[E]ach party jointly liable for a judgment for breach of contract is liable for the full amount." Tilcon Capaldi, Inc. v. Feldman, 249 F.3d 54, 62 (1st Cir. 2001) (citing Bromberg & Ribstein, Bromberg & Ribstein on Partnership § 5.10(b), at 5:91–92 (2000); 12 Richard A. Lord, Williston on Contracts § 36:1, at 610 (4th ed. 1999)).

chargeback." Id. Similarly, the language of the prospectus cited in Plaintiffs' Memorandum identifies ON Equity as the party responsible for making the payments required by the Selling Agreement. See Memo. at 4, fn.12; Compl., Ex. G at 26.

Lastly, the affidavits filed in support of Ohio National's Opposition do nothing to change the legal obligations or liability of the three Defendants. The Affidavits merely state that, factually, the payment of commissions was carried out by a process in which ON Insurance wired funds to a third party (DTCC) which then paid Commonwealth. See Opp. Ex. 2, ¶9; Ex. 3, ¶4. Even if true,[12] this statement does not, and cannot, change the language of the Selling Agreement or the operative caselaw. Whether ON Insurance physically made the payment – either on its own behalf or on behalf of one or more of the other Defendants – is not the relevant inquiry. The material issue is which Defendant(s) are legally responsible for making the payment. The Affidavits do not address that issue.

### B. Defendants' Argument that the Court Must Not Stay District Court Litigation Fails.

If ON Equity is compelled to arbitration but the other Defendants are not, the arbitration will proceed on the same facts under the same Selling Agreement, and therefore would be duplicative of any litigation in this Court. Furthermore, because the three Defendants are jointly liable, FINRA Arbitration would most likely resolve issues that would also come before the Court, if not resolve the dispute entirely. Therefore, the Court should stay litigation pending the outcome of arbitration.

Ohio National's citation to Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221

---

[12] It is difficult to accept Ohio National's argument at face value given that it contradicts the governing prospectus. To the extent the Affidavits show that the process detailed in the prospectus "is not how the process actually works," it is a violation of securities laws "to make any untrue statement of material fact" in connection with the purchase or sale of securities. See Opp. at 5-6, fn. 1; Opp. Ex. 2, ¶9; Opp. Ex. 3, ¶¶4-6; Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 137–38 (2011) (citing 17 CFR § 240.10b–5)).

(1985) does not alter the analysis.  Byrd discussed whether to compel or stay arbitration where federal claims would proceed in Federal court.  Byrd, 470 U.S. at 221-225.  The Byrd court stated that neither a denial of the motion to compel arbitration of state claims, nor a stay of arbitration was *required* in such a case.  Id. at 223.  The ruling thus does not change the District Court's inherent power to stay proceedings where the parties are concurrently in arbitration and the claims involve the same operative facts, are inherently inseparable, and the two proceedings would be duplicative.  See, e.g. Christian Mut. Life Ins. Co. v. Monarch Life Ins. Co., 2001 WL 92154, *1 (D.Mass., 2001); Bowlby v. Carter Mfg. Corp., 138 F.Supp.2d 182, 188 (D.Mass., 2001) (citations omitted).  The preclusive effect of a decision by the arbitrator counsels against concurrent arbitration and litigation.  See Bowlby, 138 F. Supp. 2d at 188-89.

## **CONCLUSION**

For the reasons set forth in Plaintiffs' Memorandum and above, Plaintiffs request that their motion to compel be granted.

> Respectfully submitted,
>
> COMMONWEALTH EQUITY SERVICES, LLC
> and MARGARET BENISON
>
> By their attorneys,
>
> /s/*Jason E. Tauches*
> Michael Donovan (BBO# 564257)
> Jason Tauches (BBO# 569448)
> Manchel & Brennan, PC
> 100 River Ridge Dr., Suite 308
> Norwood, MA  02062
> (617) 796-8920  Telephone
> (617) 796-8921  Facsimile
> mdonovan@manchelbrennan.com
> jtauches@manchelbrennan.com

Dated:  February 6, 2019

## **CERTIFICATE OF SERVICE**

       I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date specified below.

Dated: February 6, 2019                          /s/*Jason E. Tauches*
                                                       Jason Tauches (BBO#569448)