UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH EQUITY SERVICES, LLC and MARGARET BENISON, <br><br> Plaintiffs, <br><br> v. <br><br> THE OHIO NATIONAL LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Case No. 18-cv-12314-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                   April 3, 2019

## I.  Introduction

Plaintiffs Commonwealth Equity Services, LLC ("Commonwealth Equity") and Margaret Benison ("Benison") (collectively, "Plaintiffs") filed this lawsuit against Defendants the Ohio National Life Insurance Company ("ONLIC"), Ohio National Life Assurance Corporation ("ONLAC") and Ohio National Equities, Inc. ("ON Equities") (collectively, "Defendants"), alleging breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), fraud (Count IV), tortious interference with contractual and business relations (Count V), violation of Mass. Gen. L. c. 93A (Count VI) and unjust enrichment (Count VII) and seeking declaratory relief (Count I) and injunctive relief (Count VIII).  D. 1.  Plaintiffs have moved to compel arbitration and stay this proceeding pursuant to Financial Industry Regulatory Authority ("FINRA") Rule 13200(a) and/or the arbitration agreement contained in the Selling Agreement.

1

D. 21. For the reasons discussed below, Plaintiffs' motion to compel arbitration, D. 21, is ALLOWED.

## II. Standard of Review

When ruling on a motion to compel arbitration, courts should "draw [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018). Courts have consistently applied a summary judgment standard to these types of motions. See Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 258 F. Supp. 3d 255, 259 (D.P.R. 2017) (applying the summary judgment standard to a motion to compel arbitration where parties had "relied extensively upon exhibits filed in the record outside of the complaint"); Pelletier v. Yellow Transp., Inc., 503 F. Supp. 2d 397, 399 (D. Me. 2007) (citing cases). Accordingly, on a motion to compel arbitration, the Court "consider[s] facts in the light most favorable to the [non-movant] . . . and exercise[s] its 'wide discretion' to look beyond the complaint at pleadings and documents submitted by either party." Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123-24 (D. Me. 2004) (quoting Anderson v. Delta Funding Corp., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004)); see Aliments Krispy Kernels, Inc. v. Nichols Farms, 851 F.3d 283, 288-89 (3d Cir. 2017); Proulx v. Brookdale Living Cmtys. Inc., 88 F. Supp. 3d 27, 29 (D.R.I. 2015).

## III. Factual Background

The following facts are undisputed unless otherwise indicated.

### A. The Parties

Plaintiff Commonwealth Equity is a Massachusetts limited liability company and independent broker dealer registered with FINRA, as well as an investment advisor firm registered with the United States Securities and Exchange Commission ("SEC"). D. 1 ¶ 26. Commonwealth

Equity offers investment and advisory products and services directly to retail customers through agents and brokers who are licensed and registered with FINRA, the SEC and state insurance agencies. D. 1 ¶ 48. Commonwealth Equity supervises and processes the investment business of financial professionals who affiliate themselves with Commonwealth Equity. D. 1 ¶ 49. These professionals are known as representatives. Id. Plaintiff Benison has been a FINRA registered representative of Commonwealth Equity since 1998. D. 1 ¶ 27.

Defendants ONLIC and ONLAC are insurance companies that, among other things, sell insurance-related products, including life insurance. D. 23 at 4; D. 23-2 ¶ 5. Defendant ON Equities is a wholly owned subsidiary of ONLIC, D. 1 ¶ 30; D. 4 ¶ 30, and is registered with FINRA, D. 23-2 ¶ 9. Neither ONLIC nor ONLAC is a member of FINRA. D. 23-2 ¶ 5.

**B.     The Selling Agreement**

In June 1998, Defendants entered into an agreement (the "Selling Agreement") with Commonwealth Equity, pursuant to which Commonwealth Equity—through its representatives—agreed to sell Defendants' contracts. D. 1-1. These "contracts" are securities, including variable annuities. D. 22 at 3; see D. 1-7. Commonwealth Equity representatives who sold the contracts, such as Benison, were classified as independent contractors of Defendants. D. 1-1 ¶ 16. The Selling Agreement explicitly references representatives in its introduction and in seven of the contract's twenty-four numbered sections, see D. 1-1 ¶¶ 4, 5, 7, 9, 16, 17, 23, but no representatives were signatories to the Selling Agreement.

Each sale of a contract by Commonwealth Equity and its representatives included a customer premium, to be paid as a commission. The Selling Agreement outlined a procedure for the distribution of those commissions and provided they would be paid according to a separate "Commission Schedule." D. 1-1 ¶ 9. According to the Commission Schedule, ONLIC would pay

ON Equities a small percentage of each purchase payment and ON Equities would in turn pay Commonwealth Equity. D. 1-7 at 45. Commonwealth Equity then paid its representatives directly. D. 22 at 4; D. 1-1 ¶ 9. Thomas DeGaetano, Vice President of Annuity Product Management with ONLIC, attests that the individual variable annuities at issue in this case were sold by ONLIC and not ON Equities. D. 23-2 ¶ 9. He further attests that the premiums paid for the purchase of such annuities went to ONLIC and that commissions owed to Commonwealth Equity that were based on the sale of such annuities were paid by ONLIC. Id.

For some of Defendants' variable annuity contracts, Commonwealth Equity and its representatives could to choose to be paid in the form of a "trail commission" over the life of the contract. D. 1 ¶ 67; see D. 1-2 at 1. A trail commission is compensation based on both the premiums paid by the customer and the earnings on those premiums that is deferred by Commonwealth Equity and the representative for at least a year and that lasts until the contract is annuitized or surrendered. D. 1 ¶ 69. For example, if a representative sells a contract for a premium of $100,000 and agrees to a one percent trail commission starting in deposit year seven, then the representative's trail compensation for that sale would be $1,000 plus the earnings on the initial premium per year, but the representative would only begin to get paid the trail compensation seven years after the sale date of the contract. Id. The Commission Schedule provided that "[t]rail commissions [would] continue to be paid to the broker dealer of record [Commonwealth Equity] while the Selling Agreement remain[ed] in force." D. 1-2 at 2.

Under the Selling Agreement, Commonwealth Equity and Defendants agreed to be bound by all rules of the National Association of Securities Dealers ("NASD"). D. 1-1 ¶ 3. NASD was a predecessor entity to FINRA.

### C. The Selling Agreement Addendum

The Selling Agreement Addendum ("Addendum") includes an agreement signed by Commonwealth Equity and Defendants about arbitration that provides as follows:

> All parties to this agreement submit and agree that all disputes between the parties of whatever nature or subject matter relating to the duties, obligations, representations, and warranties undertaken by this Agreement, and relating to this Agreement itself, whether existing on the date hereof or arising hereafter, shall be submitted to arbitration in accordance with the Code of Arbitration Procedure of the NASD, or similar rules or code in effect on the date of submission of any such dispute.

D. 1-3 at 1. The Addendum also contains a clause providing that "at the termination of this contract all commissions, remuneration, expense allowances, and credits payable to Commonwealth Equity [] as provided by the Agreement shall continue to be payable to Commonwealth Equity [] for as long as they are listed as the Broker-Dealer of record on any such business or accounts held with the other parties." Id. The Addendum does not explicitly reference the representatives.

### D. Termination of the Selling Agreement

In a letter dated September 20, 2018, Defendants advised Commonwealth Equity that Defendants were terminating the Selling Agreement effective December 12, 2018. D. 1-4. The next day, Defendants sent another letter to Commonwealth Equity stating that "all individual annuity trail compensation under the selling agreement [would] cease" on December 12, 2018. D. 1-5.

## IV. Procedural History

Plaintiffs instituted this action on November 5, 2018. D. 1. Plaintiffs moved to compel arbitration and stay the court proceedings on January 4, 2019. D. 21. The Court heard the parties on the pending motion and took the matter under advisement. D. 27.

## V. Discussion

As a preliminary matter, the Court notes that Plaintiffs both filed this action and then moved to stay it. When Plaintiffs filed this action, they simultaneously initiated arbitration by sending a statement of claim to FINRA in accordance with FINRA Rule 13804(a)(2). D. 22 at 2. FINRA arbitration does not provide for temporary injunctive relief, but FINRA Rule 13804(a)(2) allows parties to seek such temporary relief in court after having filed a FINRA statement of claim. FINRA Rule 13804(a)(2). Plaintiffs contend that arbitration is mandatory under FINRA Rule 13200 and the terms of the Selling Agreement and Addendum and Defendants asserting that the Court should adjudicate the case or sever the arbitrable claims and proceed with the rest.

### A. <u>Legal Standards Governing Arbitration</u>

The "FAA [Federal Arbitration Act] compels judicial enforcement of . . . written arbitration agreements." <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 111 (2001). Under section 2 of the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated that "the FAA was designed to promote arbitration," <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 345 (2011), and "Section 2 embodies the national policy favoring arbitration," <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When a party petitions the Court to compel arbitration under a written agreement, it "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the

6

failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

B. **Arbitration Pursuant to FINRA Rule 13200**

Plaintiffs assert that ON Equities, Commonwealth Equity and Benison are subject to mandatory arbitration pursuant to FINRA Rule 13200(a). D. 22 at 5. FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." Id. The FINRA Code defines a person associated with a member as a "natural person." Id. § 13100(u)(1). Here, Commonwealth Equity, ON Equities and Benison are FINRA members, but ONLIC and ONLAC are not.

Registration with NASD or FINRA is generally sufficient to compel arbitration under the NASD/FINRA rules.[1] See, e.g., Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 9-10 (1st Cir. 2001); Fenton v. Linsco/Private Ledger Corp., No. 96-10747-GAO, 1996 WL 464045, at *1-2 (D. Mass. Aug. 7, 1996); O.N. Equity Sales Co. v. Finra Dispute Resolution, Inc., No. 1:07cv804, 2008 WL 281788, at *4 (S.D. Ohio Feb. 1, 2008); McCullouch v. Janney Montgomery Scott LLC, 7th Dist. Columbiana No. 13 CO 40, 2014-Ohio-4002, at ¶¶ 30-32. On the other hand, a party that "is not a FINRA member [] cannot be compelled to arbitrate under Rule 132000." Ayco Co., L.P. v. Frisch, No. 1:11-CV-580 (LEK/DRH), 2012 WL 42134, at *6 (N.D.N.Y. Jan. 9, 2012) (quoting Oppenheimer & Co., Inc. v. Deutsche Bank AG, No. 09 Civ. 8154, 2010 WL 743915, at *2 (S.D.N.Y. Mar. 2, 2010)).

---

[1] Following the consolidation of NASD and NYSE Regulation into FINRA, FINRA created a consolidated Rulebook, which went into effect on December 15, 2008. See FINRA, Regulatory Notice 08-57, SEC APPROVES NEW CONSOLIDATED FINRA RULES (October 2008).

7

Defendants do not dispute that ON Equities is subject to FINRA arbitration. Defendants, however, argue that ONLIC and ONLAC are not subject to the arbitration provision of the FINRA Code because they are not members of FINRA, nor can they be "associated persons" because that category applies only to natural persons. D. 23 at 11-12.[2] Defendants contest that there is any "dispute" involving ON Equities for which arbitration is needed, D. 23 at 18, but do not contest that this dispute (if one exists) "arises out of" the business activities between Plaintiffs and Defendants, see D. 22 at 6.

Because it is undisputed that ON Equities and Commonwealth Equity are FINRA members, and Benison is a FINRA associated person, the Court concludes they are subject to FINRA arbitration. ONLIC and ONLAC, however, are not FINRA members or associated persons, and no exception under the FINRA rules compels them to resolve disputes in FINRA arbitration. ONLIC and ONLAC, therefore, are not subject to arbitration under FINRA Rule 13200(a). These conclusions do not end the inquiry, however, because the Court must still consider whether ONLIC and ONLAC have bound themselves to FINRA arbitration through the Selling Agreement and Addendum.

    C.    **Arbitration Pursuant to the Addendum**

Plaintiffs assert that all Defendants are bound by the Addendum, which compels the arbitration of the current dispute. D. 22 at 10. Defendants counter that the Addendum imposes no valid or enforceable obligation to arbitrate on ONLIC and ONLAC. D. 23 at 12. "[A] gateway dispute about whether parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).

---

[2] Defendants also clarified they are not seeking to invoke the "Insurance Activities" exemption set forth in FINRA Rule 13200(b). D. 23 at n.7.

### 1. *Validity of the Addendum and the Presumption of Arbitration*

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir. 2019) (alterations in original) (quoting McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994)). "Thus, a party that attempts to compel arbitration 'must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope.'" Id. (alterations in original) (quoting Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017)).

The Court first concludes that the Addendum contains a valid, enforceable arbitration agreement between the parties, not just those entities already bound to FINRA arbitration under the FINRA Rules. While Defendants assert the opposite, they cite no law or fact that would render the contracts invalid under traditional principles of law or equity. The Court concludes that, because the arbitration clause is valid, Plaintiffs are entitled to invoke it and Defendants are bound by it.

The Court next considers the scope of the arbitration provision. The Supreme Court has explained that when a contract "contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 650 (1986) (alteration in original) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). "Such a presumption is particularly applicable where the clause is [] broad,"

9

PaineWebber, Inc. v. Landay, 903 F. Supp. 193, 197 (D. Mass. 1995) (quoting AT&T Techs., 475 U.S. at 650) (emphasis in original)), as is the case here, where the provision covers "all disputes between the parties of whatever nature or subject matter relating to the duties, obligations, representations, and warranties undertaken by [the Selling] Agreement," D. 1-3 at 1. Because the Selling Agreement and Addendum were validly formed and their scope is broad enough to encompass all claims at issue here, the Court holds that ONLIC and ONLAC are bound by the arbitration provision in the Addendum.[3]

2. *Plaintiffs' Disputes with ONLIC and ONLAC Accord with FINRA Rules*

The Court next assesses Defendants' argument that the Court cannot compel arbitration of Plaintiffs' claims against ONLIC and ONLAC because the Addendum only provides for arbitration "in accordance" with FINRA rules, and non-member disputes do not accord with FINRA rules. See D. 23 at 12.[4]

Plaintiffs argue that precedent from prior NASD/FINRA cases establishes that the Court can compel FINRA arbitration for non-members. For example, in St. Onge v. Fin. Mgmt., Inc., a

---

[3] To the extent Defendants argue that Benison cannot separately compel the arbitration of her claims against ONLIC and ONLAC, the Court briefly addresses and rejects that contention. First, Benison, is subject to mandatory FINRA arbitration. Second, even if Benison were unable to compel ONLIC and ONLAC through her membership in FINRA and Commonwealth Equity had not already compelled Defendants to arbitration in this matter, Benison could compel arbitration as a third-party beneficiary of the Selling Agreement and the Addendum. As is required to vest rights in a third-party beneficiary, here the Selling Agreement "manifest[s] an intent to confer specific legal rights upon [the representatives]," Hogan, 914 F.3d at 40 (citation and internal quotation marks omitted), by referring to the representatives and their role throughout the Selling Agreement. The circumstances of the Selling Agreement also indicate that "the promisee intends to give the beneficiary the benefit of the promised performance," Rae v. Air-Speed, Inc., 386 Mass. 187, 194 (1982) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 302(1) (1981)); see D. 1-1 ¶ 9 (outlining the process for allocating commissions to the representatives through Commonwealth Equity in the Selling Agreement).

[4] Although Defendants point to FINRA Rule 13200(a) as the pertinent provision, the Court notes that the Addendum does not identify a specific part of the FINRA Code with which the arbitration must be "in accordance."

state court granted a motion to compel arbitration over a claim between a customer of a FINRA member and non-members of FINRA. St. Onge v. Fin. Mgmt., Inc., No. 08-03050, 2009 WL 3554866 (FINRA), at *2 (Oct. 23, 2009). The claimants filed a motion to dismiss for lack of jurisdiction with the arbitration panel, asserting that FINRA did not have jurisdiction because respondents were not members or associated persons of FINRA. Id. Respondents argued that the FINRA Code "does not require that persons be registered with FINRA to arbitrate before FINRA." Id. The panel denied the motion to dismiss and assumed jurisdiction over the case. Id. at *3; accord Raymond, James & Assocs., Inc. v. Sw. Corp. Inv. Servs., No. 05-00005, 2005 WL 628190 (N.A.S.D), at *3 (Mar. 4, 2005) (denying a non-member's motion to dismiss the arbitration claim for lack of jurisdiction).

Similarly, in E*trade Fin. Corp. v. Carrasquillo, a court denied the plaintiff's request for injunctive relief and directed the parties to "proceed to arbitration in accordance with their agreements." E*trade Fin. Corp. v. Carrasquillo, No. 8:07-CV-1131-T-27MSS, 2007 WL 2480308, at *2 (M.D. Fla. Aug. 30, 2007). Although not specified in the court's order, the FINRA arbitration panel provided additional context for the procedural posture of the court case, explaining that the respondents (a FINRA member and an associated person) had filed a motion to compel arbitration against the claimant (a non-member) in court. E*trade Fin. Corp. v. Carrasquillo, No. 07-02146 (FINRA), 2009 WL 365357, at *2 (Jan. 27, 2009). The FINRA arbitration panel decided the matter, despite the claimant being a non-member. Id.

Another illustrative example is UBS Fin. Servs. Inc. v. Fagenson, in which the FINRA arbitration panel held that arbitration between two claimants (a FINRA member and a non-member) and their former employer (a FINRA associated person) was "mandatory"—even with respect to the non-member claimant—based on the parties' execution of a pre-dispute agreement

11

containing a broad arbitration provision. UBS Fin. Servs. Inc. v. Fagenson, No. 17-00195, 2017 WL 4785856 (FINRA), at *2 (Oct. 17, 2017).

Defendants do not distinguish these cases but instead rely upon UBS Bank USA v. Hussein, No. 2:14-CV-106, 2014 WL 1600375 (D. Utah Apr. 21, 2014). In Hussein, the plaintiff, UBS Bank, sought to enjoin Hussein from pursuing claims against UBS Bank in FINRA arbitration. Id. at *1. Hussein had entered into a contract with various UBS affiliates in connection with his brokerage accounts that contained an arbitration provision. Id. The arbitration provision stated that the parties gave up their right to sue in court "except as provided by the rules of the arbitration forum in which a claim is filed." Id. The court held that even if UBS Bank were a party to the contract, which the parties disputed, UBS Bank still would not be obligated to arbitrate the claims before FINRA. Id. at *3. The court concluded that "FINRA's rules [did] not allow it to arbitrate claims against UBS Bank without UBS Bank's consent." Id. The court's conclusion was informed by a letter from FINRA to Hussein informing him that UBS was "not compelled by the Code of Arbitration Procedure to arbitrate disputes with [Hussein] in this forum." Id. at *2.

Defendants also cite to two aspects of the FINRA Customer Code that they argue should inform the Court's interpretation of FINRA Rule 13200 (which is part of the FINRA Industry Code).[5] According to Defendants, the FINRA Customer Code contains broader arbitrability language than the FINRA Industry Code and the difference in scope between the two Codes shows that the Industry Code, which applies to this matter, is intentionally restrictive. First, Defendants point to FINRA Rule 12201, which covers elective arbitration in the FINRA Customer Code, and

---

[5] The FINRA Customer Code (FINRA Rules 12000-12905) governs arbitrations between investors and brokers and/or brokerage firms while the FINRA Industry Code (FINRA Rules 13000-13905) governs arbitrations between or among industry parties. See CODE OF ARBITRATION PROCEDURE, https://www.finra.org/arbitration-and-mediation/code-arbitration-procedure (last visited Mar. 27, 2019).

12

highlight the fact that this Rule, unlike Rule 13200 (the analog in the FINRA Industry Code), allows for the arbitration of disputes between "a customer and a member, associated person of a member, or other related party." FINRA Rule 12201. Defendants argue that because the term "other related party" appears in FINRA Rule 12201 and not in FINRA Rule 13200, the exclusion was "clearly intentional" and meant to eliminate the possibility of "other parties" participating in FINRA industry disputes such as this one. D. 23 at 16. Second, Defendants cite to the FINRA guidance on disputes between investors and investment advisers who are not FINRA members. See G̲uidance on Disputes between Investors and Investment Advisers that are Not FINRA Members, https://www.finra.org/arbitration-and-mediation/investment_advisers (last visited Mar. 27, 2019); D. 23-1. In the guidance, FINRA indicates that it will exercise arbitration jurisdiction over non-member Registered Investment Advisers in customer disputes only where, among other things, the non-FINRA member Investment Advisor executes a post-dispute arbitration agreement submitting to FINRA arbitration. Id. According to Defendants, the fact that a pre-dispute agreement to arbitrate is insufficient to compel non-members under the more permissive Customer Code means such an agreement must also be insufficient under the Industry Code.

Finally, Defendants argue that historical changes in the pertinent NASD/FINRA Rules support the extension of U̲BS Bank to this case. NASD Rule 10201(a) provided for arbitration by "certain others," outside of members and associated persons. NASD Rule 10201(a).[6] FINRA Rule

---

[6] NASD Rule 10201(a) provides in full: "(a) Except as provided in paragraph (b) or Rule 10216 [both of which relate to statutory discrimination claims], a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated

13

13200 replaced NASD Rule 10201 and does not include the "certain others" language. Defendants assert that the FINRA Rules, therefore, do not contemplate the arbitration of claims over non-members. Cf. Wells Fargo Advisors, LLC v. Quantum Fin. Partners LLC, No. 15-9145-JAR-JPO, 2015 WL 5053631, at *2 (D. Kans. Aug. 26, 2015) (concluding, based on a comparison of the old NASD Rule to FINRA Rule 13200, that "FINRA arbitration precludes parties who are not members or associated persons from compelling arbitration").

The Court concludes that Defendants' arguments are unavailing. First, the facts of UBS Bank are distinguishable. In UBS Bank, FINRA had already indicated to the parties that the case did not fall under its jurisdiction. In the present case, FINRA has not indicated whether it has jurisdiction, and Plaintiffs cite to several analogous circumstances in which FINRA asserted jurisdiction despite opposition from non-member parties. Second, the historical changes from the NASD Rules do not tip the scales in Defendants' favor. Since the changes, FINRA has conducted arbitrations in industry disputes between members, associated persons and non-members on a voluntary basis and pursuant to arbitration agreements. See, e.g., Fagenson, 2017 WL 4785856 (FINRA), at *2; PMW Partners v. NBC Securities, Inc., No. 09-01289, 2011 WL 1938215 (FINRA), at *5 (May 9, 2011) (explaining that a trial court had granted a motion to compel FINRA arbitration pursuant to an arbitration agreement between a non-member and a member and the appeals court had denied the claimant's interlocutory appeal of that order). Those arbitrations also proceeded under the FINRA Industry Code Rules, despite the difference in scope between the Customer and Industry Codes upon which Defendants rely. See Fagenson, 2017 WL 4785856 (FINRA), at *2 (applying FINRA Rule 13806, which is part of the Industry Code); PMW Partners

---

with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member."

v. NBC Securities, Inc., 2011 WL 1938215 (FINRA), at *6 (applying FINRA Rule 13702, which is part of the Industry Code). Finally, Defendants' reliance upon Wells Fargo Advisors, LLC v. Quantum Fin. Partners is unpersuasive because in that case, there was no contractual arbitration agreement between the FINRA member and non-member. Wells Fargo Advisors, LLC v. Quantum Fin. Partners LLC, 2015 WL 5053631, at *2.

For all of these reasons, the Court concludes that compelling arbitration by ONLIC and ONLAC in the instant dispute is warranted.[7]

**VI.    Conclusion**

For these reasons, Plaintiffs' motion to compel arbitration and stay court proceedings, D. 21, is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[7] Because the Court concludes that all Defendants are subject to FINRA arbitration pursuant to the Addendum and, in the case of ON Equities, FINRA Rule 13200(a), the Court need not reach the parties' arguments regarding the severance of claims.